IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| O&G INDUSTRIES, INC. | : |
| Plaintiff, | : : |
| | : Civil Action No. 3:12-cv-01687-AWT |
| VS. | : : |
| EVEREST NATIONAL INSURANCE COMPANY, | : : December 11, 2012 |
| Defendant. | : : |

## FIRST AMENDED COMPLAINT

Plaintiff O&G Industries, Inc. ("O&G" or "Plaintiff"), by and through its undersigned attorneys, for its First Amended Complaint against defendant Everest National Insurance Company ("Everest" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is an action for breach of contract, declaratory judgment, and breach of Mass. Gen. Laws Chapter 93A and Conn. Gen. Stat. §42-110 based upon Everest's improper refusal to honor its obligations under a commercial excess liability policy, policy no. 71C8000079-091 (the "Policy"), it issued to Keystone Construction and Maintenance Services, Inc. ("Keystone") with respect to liability Keystone incurred in connection with arbitration claims asserted against it by O&G arising out of an explosion during the construction of the Kleen Energy Power Plant (formally known as "620 MW Combined Cycle Gas Fired Power Project") (the "Project" or the "Plant") in Middletown, Connecticut on February 7, 2010. O&G is an additional insured under the Policy, with respect to $5 million of the Policy's $10 million coverage limit.

2. O&G and Keystone settled O&G's claims and Keystone assigned its rights under the Policy to O&G for purposes of collecting part of the settlement amount.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

4. Venue in this District is proper under 28 U.S.C. § 1391(a) and (c) because Plainitff's principal palce of business is located in this District.

## THE PARTIES

5. Plaintiff O&G is a corporation organized under the laws of the State of Connecticut, with its principal place of business located in Torrington, Connecticut.

6. Defendant Everest is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Liberty Corner, New Jersey.

## FACTUAL BACKGROUND

**The Project**

7. On or about November 30, 2007, O&G and Kleen Energy Systems, LLC ("Kleen") entered into an "Engineering, Procurement and Construction Agreement" (the "EPC Agreement") in connection with the Project.

8. On or about March 26, 2009, O&G contracted with Keystone to erect and install above ground piping in connection with the Project (the "Keystone Subcontract").

9. Included in Keystone's scope of work was the responsibility for: "Designing, furnishing, installing and removal of all temporary piping … required for … cleaning … and flushing of the piping systems in the field." (emphasis added).

nydocs1-999914.3

10. Additionally, O&G and Keystone entered into a Fuel Gas Piping Construction Contract, which was appended to the Keystone Subcontract via change order. The Scope of Work document contained in that Fuel Gas contract required that Keystone "furnish, fabricate, assemble, <u>clean</u> … test and flush/<u>clean</u> the pipe…." (emphasis added).

**The Explosion**

11. On February 7, 2010, a natural gas explosion occurred at the Plant during Keystone's cleaning of the piping system through a procedure known as "gas blows" (the "Explosion").

12. The Explosion caused several deaths and additional bodily injuries, as well as extensive Project delays and substantial physical damage to the Plant, including to parts of the Project on which Keystone did not perform any work.

13. The gas blows constituted a construction cleaning activity and, therefore, fell within Keystone's scope of work for the Project.

**The Arbitration**

14. On or about December 16, 2011, O&G commenced an arbitration against Keystone asserting claims for negligence and breach of contract, alleging that Keystone was responsible for the Explosion and the resulting damages O&G suffered as a consequence of the Explosion (the "Arbitration").

15. O&G sought damages against Keystone in the arbitration -- because of bodily injury and property damage caused by Keystone -- that exceed $53 million. Specifically, O&G sought $44,600,000 from Keystone for the delay liquidated damages it paid to Kleen under the EPC Contract for the Project delays and loss of use caused by the Explosion ($200,000 per day for every day the project was not timely completed) (the "Kleen LDs").

16.     O&G also sought delay liquidated damages from Keystone under two sections of the Keystone Subcontract.

17.     The Keystone Subcontract called for Guaranteed Substantial Completion of Keystone's work on or before a date certain. However, due in part to the above-described Project delays caused by the Explosion, substantial completion under the Subcontract was delayed 405 days.

18.     Section 34.2 of the Keystone Subcontract provides that Keystone must pay Substantial Completion Delay Damages of $15,000 for each day of delay after the Guaranteed Substantial Completion Date.

19.     In the Arbitration, O&G asserted that Keystone was obligated to pay it $6,075,000 for liquidated damages under Section 34.2 of the Subcontract ($15,000 per day X 405 days), a portion of which is attributable to the Explosion.

20.     The Subcontract also called for substantial completion of the Steam and Water System on or before a date certain and of the Instrument and Control Air System on or before a date certain. However, due in part to the Project delays caused by the Explosion, substantial completion of the Steam and Water System and of the Instrument and Control Air System was delayed 412 days and 409 days, respectively.

21.     Section 34.1 of the Subcontract provides that Keystone must pay to O&G liquidated System Completion Delay damages of $5,000 for each day of delay after the Guaranteed Completion Date of a System, until Keystone achieves System Completion for that System.

22.     In the Arbitration, O&G asserted that Keystone was obligated to pay it $4,105,000 for liquidated damages under Section 34.1 of the Subcontract ($5,000 per day X 821

days), a portion of which is attributable to the Explosion. (The delay damages under Sections 34.1 and 34.2 of the Keystone Subcontract shall be referred to herein collectively as the "O&G LDs".)

23. Additionally, Kleen has demanded that O&G reimburse it for several items of damage, including attorneys' and consultants' fees and other costs it allegedly incurred as a result of the Explosion, totaling nearly $17 million (the "Pending Kleen Energy Claim"). O&G sought as damages against Keystone in the Arbitration any amounts that O&G has to pay to Kleen in connection with the Pending Kleen Energy Claim (the "Pending Kleen Claim Damages"). (The Kleen LDs, the O&G LDs, and the Pending Kleen Claim Damages shall be referred to herein collectively as the "O&G Damages".)

24. Further, O&G sought to recover against Keystone in the Arbitration in excess of $1 million for attorneys' fees and related costs that it was forced to incur because of the bodily injuries and property damage resulting from the Explosion (the "Attorneys' Fees Claim").

25. Keystone's primary commercial general liability insurance carrier, ACE American Insurance Company, settled O&G's Attorneys' Fees Claim on Keystone's behalf by agreeing to pay its $1 million per occurrence policy limit over to O&G, thereby exhausting that policy (the "ACE Policy").

26. Keystone and O&G settled O&G's remaining Arbitration claims for the O&G Damages for $37 million and 66% of any liability that is incurred by O&G for the Pending Kleen Energy Claim, and Keystone assigned its rights under the Policy to O&G for purposes of collecting part of the settlement amount (the "Settlement"). Keystone also assigned to O&G its right to pursue extra-contractual remedies against Everest for Everest's improper claims handling and refusal to pay.

**The Policy**

27. Everest sold Keystone the Policy. (A copy of the Policy is attached hereto as Exhibit A.)

28. The Policy follows form to the ACE Policy, which promises to "pay those sums that the insured becomes legally obligated to pay as damages <u>because of</u> 'bodily injury' or '<u>property damage</u>' to which this insurance applies." (Emphasis added) (A copy of the ACE Policy is attached hereto as Exhibit B.)

29. O&G's Arbitration claims against Keystone and the O&G Damages are covered under the Policy.

30. The ACE Policy was properly exhausted through the payment of O&G's Attorneys' Fees claim in the Arbitration, thereby triggering the coverage under the Policy.

31. Keystone has paid all premiums due under the Policy and has complied with all conditions to coverage.

**Everest's Wrongful Failure to Acknowledge Coverage**

32. Prior to entering into the Settlement, Keystone had presented to Everest a settlement demand by O&G, and had demanded that Everest acknowledge its contractual obligations to Keystone, participate in settlement discussion with O&G, and agree on Keystone's behalf to make any payments to O&G required to the extent of its contractual obligations to Keystone.

33. Everest wrongfully failed and refused to enter into good faith settlement negotiations and participate in a settlement of the Arbitration claims.

34. Everest wrongfully refused to acknowledge its duty under the Policy to indemnify Keystone for any portion of the covered Arbitration claims and the O&G Damages.

35. Everest has wrongly failed and refused to issue a coverage determination with respect to the Arbitration claims.

36. Keystone has agreed, and has informed Everest, that it consents to the payment of the Everest Policy limits to O&G.

**Everest's Unfair and Deceptive Acts and
Practices in Handling Keystone's Insurance Claim**

37. Keystone provided notice to Everest of O&G's Arbitration claims against it in mid-December of 2011.

38. On January 11, 2012, Everest wrote to Keystone, denying any duty to defend and reserving its rights regarding its duty to indemnify Keystone. As reasons for its reservation of rights, Everest stated that: it would not indemnify Keystone for damages that did not arise from "property damage"; O&G's claims potentially fell within various exclusions; and any indemnity obligation would begin only after Keystone's underlying insurance and "other insurance" were exhausted. Everest did not request any information from Keystone.

39. On or about May 1, 2012, despite having not requested any information, Everest complained to O&G that it had no information about the substance of the O&G Arbitration Claims.

40. On May 2, 2012, O&G's counsel wrote to Everest, providing detailed information about the damages that O&G sought in the Arbitration and an analysis of why coverage is provided under the Policy.

41. Keystone's counsel wrote to Everest on May 16, 2012, providing additional information, and asking that Everest either contribute the limits of the Policy to a pool

of funds to settle various lawsuits against Keystone, O&G and others, or to participate in settlement discussions with respect to the O&G Damages.

42. On May 25, 2012, the ACE Policy was exhausted through an agreement between ACE, Keystone and O&G for the ACE Policy limits to be paid to O&G to resolve the Attorneys' Fees Claim. Everest was promptly notified of the exhaustion of the ACE Policy.

43. On June 13, 2012, Everest's counsel wrote to O&G's counsel stating – incorrectly – that it had been given no documentation to assess O&G's claim, and requesting for the first time a list of documents concerning the Arbitration claims.

44. Everest's counsel wrote to Keystone's counsel on the same date, stating that Everest refused to contribute to a settlement pool for other actions, requested a list of documents concerning the O&G Arbitration claims, and stated that counsel "will immediately undertake to review it and will advise you of whether, and if so how, that information effects the coverage positions communicated to you in Everest's January 11, 2012, coverage position letter."

45. On June 19, 2012, O&G's counsel responded to Everest's information request, providing further information regarding O&G's damages, contract documents, and a statement of the factual allegations on which O&G relied to support its claim that Keystone was responsible for the explosion. That letter requested that Everest acknowledge coverage for the Arbitration claims. Upon information and belief, Keystone also provided the requested information to Everest at about this time.

46. On June 20, 2012, Keystone provided Everest with a detailed legal analysis in support of coverage for the Arbitration claims.

47. On July 16, 2012, O&G's counsel provided proof of payment for O&G's liquidated damages claim to Everest's counsel.

48. After Everest's refusal to participate in a pool to settle various lawsuits, Keystone repeatedly informed Everest of its desire that Everest settle O&G's Arbitration claims. Among other things in that regard, Keystone agreed to attend a meeting with Everest and O&G in late June or early July, 2012 at which an effort was to be made to settle the O&G Arbitration claims. That meeting did not take place due to the purported unavailability of Everest. Further, Keystone's counsel wrote to Everest's counsel on August 23 and 24, 2012, respectively, advising that Keystone was in poor financial condition, asking Everest to negotiate a resolution with O&G and advising that if Everest did not, Keystone would settle with O&G and assign its rights against Everest to O&G.

49. On November 19, 2012, O&G's counsel wrote to Everest's counsel, stating that Keystone and O&G had settled and that O&G had been assigned Keystone's coverage claim against Everest and demanding that Everest pay its Policy's limit toward the payment of the settlement amount. O&G's counsel also enclosed a proposed settlement agreement between Everest, O&G, and Keystone which was signed by O&G and Keystone.

50. Everest improperly and unreasonably delayed its investigation of coverage for the O&G Arbitration claims, and even though it was provided with all of the information that it belatedly requested, and even though underlying policy limits have been exhausted, a year after it received notice Everest still refuses to make a determination with respect to coverage for the O&G Damages.

## COUNT I.

## BREACH OF CONTRACT

51. Plaintiff repeats and realleges paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. The O&G Arbitration claims and the O&G Damages are covered under the Policy.

53. Everest wrongfully failed and refused to indemnify Keystone for the Settlement, up to its per occurrence Policy limit of $10 million.

54. Everest's failure and refusal to indemnify Keystone for the Settlement up to its Policy limit constitutes a breach of its contractual duties under the Policy.

55. As a result of Everest's wrongful failure and refusal to indemnify Keystone for the Settlement up to its Policy limit, O&G, as assignee of Keystone's rights under the Policy, has suffered damages in an undetermined amount to be proven at trial.

## COUNT II.

## DECLARATORY JUDGMENT

56. Plaintiff repeats and realleges paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. Everest's wrongful failure and refusal to indemnify Keystone for up to its Policy limit has created an actual and justiciable case or controversy.

58. Plaintiff is entitled to a declaration that Everest must pay to Plaintiff the damages sought in this Complaint including, without limitation, any amounts Plaintiff must pay to Kleen for the Pending Kleen Claim Damages.

59. Declaratory relief will terminate some or all of the disputes between Plaintiff and Everest. This judicial declaration is necessary because Plaintiff's liability for the Pending Kleen Claim Damages may not be fixed prior to the completion of this action.

## COUNT III.

### BREACH OF MASSACHUSETTS GENERAL LAWS 93A § 11 (AGAINST EVEREST)

60. Plaintiff repeats and realleges paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. At all times relevant to this case, Keystone and Everest engaged in the conduct of trade or commerce.

62. Under Massachusetts General Massachusetts General Laws 176D § 3, Everest had and has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle Keystone's claim fairly.

63. Everest failed in its obligations under Massachusetts General Laws 176D § 3 by: (i) failing to acknowledge and act reasonably promptly upon communications with respect to the claim arising under the Policy; (ii) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the Policy; (iii) refusing to pay the claim without conducting a reasonable investigation based upon all available information; (iv) failing to affirm or deny coverage of the claim within a reasonable time; and (v) failing to effectuate a prompt, fair and equitable settlement of the claim when liability had become reasonably clear.

64. Everest's actions were an unfair method of competition and unfair or deceptive act or practice and a violation of Massachusetts General Laws c. 93A § 2.

65. These actions by Everest violated Massachusetts General Laws c. 93A § 11.

66. Everest committed these violations knowingly and willfully.

67. As a direct and foreseeable result of Everest's unfair settlement practices, O&G has suffered a loss of money. Therefore, O&G is entitled to damages as a result of Everest's breach, in an amount to be proven at trial, and to penalties to be assessed at three times the damages sustained.

## COUNT IV.

### VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT (AGAINST EVEREST)

68. Plaintiff repeats and realleges paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o persons shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. §42-110b(a).

70. Everest violated CUTPA in a number of ways, including, among others: (i) by failing to pay indemnification of losses, including Keystone's loss, at the time Everest knew or reasonably should have known that Keystone was entitled to such insurance coverage; (ii) by deliberately delaying a coverage determination with respect to Keystone's claim; and (iii) by forcing Plaintiff to commence and prosecute this action to obtain the insurance coverage to which Keystone was entitled under the Policy.

71. The foregoing actions by Everest are wrongful, intentional, willful, wanton, immoral, oppressive, unscrupulous, and offend public policy.

72. O&G suffered a substantial and ascertainable loss of money as a consequence of Everest's unfair and/or deceptive actions, the exact amount to be proven at trial.

73. Everest acted in reckless disregard of Keystone's rights, and with the intent to vex, injure, and annoy so as to constitute oppression, fraud and malice, thereby justifying punitive and exemplary damages sufficient to punish Everest and to deter such conduct in the future.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment:

74. On Count I in favor of Plaintiff and against Defendant in an amount to be determined, including compensatory damages, consequential damages, pre- and post-judgment interest, attorneys' fees, costs, and other relief as this Court may deem appropriate.

75. On Count II in favor of Plaintiff declaring that Everest must pay to Plaintiff the damages sought in this Complaint including, without limitation, any amounts Plaintiff must pay to Kleen for the Pending Kleen Claim Damages, up to its full Policy limits, and awarding pre- and post-judgment interest, attorneys' fees, costs, and other relief as this Court may deem appropriate.

76. On Count III in favor of Plaintiff and against Defendant for breach of Massachusetts General Laws c. 93A § 11 in an amount to be determined by the Court, together with multiple damages in an amount not less than two nor greater than three times the amount of the actual damages, along with pre- and post-judgment interest, costs, attorneys' fees and other relief as this Court may deem appropriate.

77. On Count IV in favor of Plaintiff and against Defendant for breach of C.G.S. §42-110b in an amount to be determined by the Court, together with costs, attorneys' fees

and punitive damages, pursuant to Conn. Gen. Stat. §42-110g, along with pre- and post-judgment interest and other relief as this Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all Counts so triable.

By: *s/ Finley Harckham*
Finley Harckham
Dennis J. Artese
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel:  (212) 278-1000
fharckham@andersonkill.com
dartese@andersonkill.com

Attorneys for Plaintiff
O&G INDUSTRIES, INC.

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on December 11, 2012, a copy of the above First Amended Complaint was served on defendant Everest National Insurance Company by delivering said copy by Federal Express overnight mail as follows:

    Everest National Insurance Company
    477 Martinsville Road
    Liberty Corner, NJ 07938-0830

                                        *s/ Dennis J. Artese*
                                            Dennis J. Artese